[No. 15662-8-II.   Division Two.   July 15, 1994.]

FIRST INTERSTATE BANK OF WASHINGTON, N.A.,
*Respondent*, v. WESTCAP FOREST PRODUCTS, INC., ET AL,
*Defendants*, JEFFREY LOTH, ET AL, *Petitioners*.

*Robert J. Adolph* and *Adolph & Smyth, P.S.*, for petitioners.

*James L. Robart, Randall P. Beighle*, and *Lane Powell Spears Lubersky*, for respondent.

MORGAN, C.J. — Loth Lumber Co., Inc., appeals an order denying its motion to vacate certain writs of attachment. We affirm.

In 1989, WestCap Forest Products, Inc., and Blackhills Cattle and Timber Co., Inc., were both Washington corporations. Thomas Westbrook and his marital community owned majority interests in both. Blackhills and Westbrook also owned real property in Thurston County.

On July 31, 1989, WestCap purchased from Loth a sawmill located in Clallam County. WestCap financed the purchase by agreeing to pay about $4 million to First Interstate Bank and about $1 million to Loth on a contract.[1] Both debts were guaranteed by Blackhills, and by Westbrook personally.

By April 1991, WestCap had defaulted on both debts. Thus, First Interstate sued in the Clallam County Superior Court, naming WestCap, Blackhills, Westbrook, Loth and others as defendants. In May 1991, Loth cross-claimed against WestCap, Blackhills and Westbrook.

In June, First Interstate filed a motion for summary judgment, which it scheduled for hearing on June 28, 1991. However, a week before the hearing was to take place, First Interstate, WestCap, Blackhills and Westbrook entered into a settlement agreement by which: (1) WestCap, Blackhills and Westbrook agreed to a judgment for about $4 million; (2) First Interstate agreed not to file or execute on the judgment for another 90 days, during which WestCap, Blackhills and Westbrook could pay off First Interstate or otherwise cure their defaults; (3) Blackhills stipulated to issuance of a prejudgment writ of attachment, without bond, against its real estate in Thurston County; and (4) Westbrook stipulated to issuance of a prejudgment writ of attachment, without bond, against his real estate in Thurston County. Loth did not know of or participate in the settlement agreement.

On June 26, 1991, the Clallam County Superior Court issued the stipulated writs of attachment, without bond. On July 1, a Thurston County deputy sheriff levied the writs on the affected property. The deputy then filed two returns with the Clallam County Superior Court. One was titled, "Sheriff's Return on Writ of Attachment Re The Westbrooks", and had an addendum titled, "Notice of Attachment (Re: Westbrooks) Real Property".[2] The other was titled "Sheriff's Return on Writ of Attachment Re Blackhills", and had an addendum

---

[1] The exact amounts and details of these debts are not pertinent to the issues in this appeal.

[2] Clerk's Papers, at 393-94.

titled, "Notice of Attachment (Re: Blackhills) Real Property".[3] In each addendum, the deputy failed to recite the name of the specific defendant against whom he had levied the writs; instead, he recited that he had "levied and attached all the right, title, claim and interest of WestCap Forest Products, Inc., a Washington Corporation; et al., defendant(s), or either of them . . .". In each addendum, the deputy also recited, mistakenly, that the writs of attachment had been issued out of the Thurston County Superior Court.

On August 29, 1991, Loth moved the Clallam County Superior Court for summary judgment against WestCap, Blackhills and Westbrook. It also moved the same court for prejudgment writs of attachment on the same Thurston County properties that First Interstate had previously attached.

On September 13, the Clallam County Superior Court granted writs in favor of Loth, although it conditioned issuance of the writs on the filing of attachment bonds. On September 20, 1991, the same court granted Loth's motion for summary judgment.

Also on September 20, WestCap filed for bankruptcy. On October 11, First Interstate obtained a Clallam County judgment against Blackhills and Westbrook based on the June settlement agreement.

On November 11, Loth moved the Clallam County court to vacate the writs of attachment that had been obtained by First Interstate on June 26. It urged, "The attachments are defective because the bank failed to post a statutorily required bond and failed to correctly identify the owner of the property attached."[4]

On December 20, the Clallam County Superior Court denied Loth's motion. It also allowed the Thurston County Sheriff to amend his returns to show that he had "levied and attached all the right, title, claim and interest" of the specific relevant property owner, as opposed to the "right,

---

[3]Clerk's Papers, at 395-96.

[4]Clerk's Papers, at 126.

title, claim and interest of WestCap Forest Products, Inc. . . . et al., defendant(s), or either of them . . .". The court also allowed the sheriff to amend his returns to show that the writs of attachment had issued out of the Clallam County Superior Court. Loth then appealed.

## I

Loth's first argument is that First Interstate's writs of attachment are invalid because they were not accompanied by attachment bonds. At least tacitly, Loth asserts that it has standing to complain about lack of a bond, and that neither Westbrook nor Blackhills could waive bond.

RCW 6.25.080(1) provides in pertinent part:

[B]efore the writ of attachment shall issue, the plaintiff . . . shall execute and file with the clerk a surety bond or undertaking in the sum in no case less than three thousand dollars . . . and double the amount for which plaintiff demands judgment, or such other amount as the court shall fix, conditional that the plaintiff will prosecute the action without delay and will pay all costs that may be adjudged to the defendant, and all damages that the defendant may sustain by reason of the writ of attachment . . ., not exceeding the amount specified in such bond or undertaking, as the penalty thereof, should the same be wrongfully, oppressively or maliciously sued out.

In our view, this statute does not require a bond for the benefit of everyone in the world; rather, it requires a bond for the benefit of the owner or others having an interest in the attached property at the time of the issuance of the attachment. Loth had no interest in the attached parcels when First Interstate's writs were issued, and thus Loth lacks standing to complain about lack of a bond.

Moreover, the right to a bond, like most rights, may be waived by its holder, *i.e.*, by the party for whose benefit the right exists. Here, that person was Westbrook with respect to his property, and Blackhills with respect to its property. Each of them clearly waived any right to a bond, and Loth has no right to interfere in that decision.[5]

---

[5]Loth says that *Connecticut v. Doehr*, 501 U.S. 1, 115 L. Ed. 2d 1, 17, 111 S. Ct. 2105 (1991) stands for the proposition that issuing a writ of attachment without abond violates due process of law. This is incorrect. Four Justices in

Parenthetically, our rulings are consistent with the law in other jurisdictions. Generally, a third party such as a junior attaching creditor may not assert rights personal to the owner of the attached property in such a way as to interfere in the relationship between the owner and a senior attaching creditor. *See Strawberry Growers' Selling Co. v. Lewellyn*, 158 La. 303, 306, 103 So. 823, 824, 39 A.L.R. 1502 (1925); *Galloway v. Levitt*, 135 So. 2d 798, 801-02 (La. Ct. App. 1961) (quoting *Gilkeson Sloss Comm'n Co. v. Bond & Williams*, 44 La. Ann. 841, 843, 11 So. 220, 221 (1892)); 6 Am. Jur. 2d *Attachment and Garnishment* §§ 579, 584 (1963). Here, the right to a bond is personal to Westbrook and Blackhills, and Loth cannot assert it in such a way as to interfere in their relationship with First Interstate.

## II

Loth's remaining arguments are that the trial court erred by permitting the Thurston County Sheriff to amend his returns, and by failing to quash the writs of attachment because the returns were defective. As already noted, the sheriff's unamended returns stated that First Interstate's writs of attachment had been issued by the Thurston County Superior Court, and that the writs had been levied against "WestCap Forest Products, Inc., a Washington Corporation; et al., defendant(s), or either of them".

■ RCW 6.25.280 provides:

> This chapter shall be liberally construed, and the plaintiff, at any time when objection is made thereto, shall be permitted to amend any defect in the complaint, affidavit, bond, writ or other proceeding, and no attachment shall be quashed or dismissed, or the property attached released, if the defect in any of the proceedings has been or can be amended so as to show that a legal cause for the attachment existed at the time it was issued, and the court shall give the plaintiff a reasonable time to perfect such defective proceedings.

---

*Doehr* said that due process requires that a prejudgment writ *statute* must include a bond requirement to withstand a due process challenge. Neither the Court nor any Justice held that due process prevents a property owner from waiving an attachment bond that a statute would otherwise require for the property owner's benefit. *Cf.* 7 C.J.S. *Attachment* § 127 (1980) (defendant can waive defects in attachment bond).

This statute expressly authorizes amendments of the kind made here. After the amendments, the sheriffs returns were not defective. Thus, Loth's arguments fail.

Affirmed.

ALEXANDER and HOUGHTON, JJ., concur.